**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Albert W Swanson,<br>Plaintiff,<br>v.<br>Nationstar Mortgage LLC,<br>Defendant. | No. CV-24-03232-PHX-SMB<br>**ORDER** |

Before the Court is Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper's Motion for Summary Judgment (Doc. 27). The Court **grants** the Motion for the reasons below.

## I. BACKGROUND

The pertinent, undisputed facts are as follows. (Doc. 28; Doc. 33).

On January 17, 2020, Plaintiff Albert Swanson obtained a $377,400 loan (the "Loan") secured against his real property at 41705 N. Maidstone Court, Anthem, AZ 85086. (Doc. 33 at 2.) LoanCare, LLC began servicing the Loan effective March 1, 2020. *Id.*) Beginning in June 8, 2020 and continuing through November 30, 2021, LoanCare placed Plaintiff on forbearance due to the COVID-19 pandemic. (*Id.*) However, when forbearance ended, Plaintiff failed to pay the Loan back. (*Id.*)

On March 12, 2022, Plaintiff executed a Partial Claim Deed of Trust and a Promissory Note (collectively, the "Partial Claim Loan") in the amount of $41,666.57 to bring the Loan fully current and establish a junior lien on the Property. (*Id.*) The Partial Claim Deed of Trust was recorded in the Official Records of Maricopa County on March

16, 2022.[1] (*Id.* at 3.)

On March 23, LoanCare informed Plaintiff that the Loan was still due and sought payment for June 1, 2020 and later payments. (*Id.* at 4.) This correspondence did not reflect any payment from the Partial Claim Loan. (*Id.* at 3.) By August 17, LoanCare denied Plaintiff a loan modification. (*Id.* at 4.)

On September 22, 2022, LoanCare transferred service of the loan to Defendant. (*Id.*) Two days later, Defendant sent Plaintiff a validation of debt letter, which stated that there were overdue payments and that $54,490.33 was due on October 1, 2022. (*Id.* at 5.) This letter listed the address for sending information inquiries as Mr. Cooper, PO Box 619098, Dallas, TX 75261-9741. (*Id.*)

On December 6, 2022, Defendant sent Plaintiff a letter stating that he needed to cure the default by January 10, 2023, or the Loan may be referred to foreclosure. (*Id.*) On February 2, 2023, Defendant informed Plaintiff that the Loan was referred to foreclosure and gave him information concerning loss mitigation. (*Id.* at 6.)

On May 19, 2023, Plaintiff emailed Defendant, seeking responses to various questions. (*Id.* at 6.) The parties label this communication the first Notice of Error ("NOE 1"). (*Id.*) Defendant acknowledged NOE 1 on May 23, and responded to it on June 28. (*Id.*) Defendant then received a letter from the Dann Law firm on August 15, 2023. (*Id.* at 7.) The parties label this communication the first Request for Information ("RFI 1"). (*Id.*) Defendant acknowledged RFI 1 on August 22, and responded on September 15. (*Id.*) Defendant then received an additional letter from the Dann Law firm on October 6, 2023 ("RFI/NOE 2"), which he acknowledged on October 16 and responded on November 28. (*Id.*) On January 25, 2024, Defendant received a third letter from the Dann Law firm dated January 18, 2024 ("RFI/NOE 3"), which he acknowledged on January 26 and responded on March 4. (*Id.* at 8.)

[1] The parties dispute the validity of the Partial Claim Loan. Defendant avers that LoanCare denied the Partial Claim Loan and sent a Partial Claim agreement in error. (Doc. 28 at 2.) Plaintiff disagrees, citing his recordation of the Partial Claim Deed of Trust in the Official Records of Maricopa County. (Doc. 33 at 3.) However, it is undisputed that LoanCare rescinded the Partial Claim Deed of Trust on March 11, 2024, and that Plaintiff received a new partial claim loan from the Secretary of Veterans Affairs in July 2024.

In November 2024, Plaintiff sued Defendant, alleging violations of various federal statutes and regulations related to a loan servicer's communications with a debtor. Defendant now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.*

The burden initially falls on the movant to demonstrate the basis for a motion for summary judgment and "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine*

*Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has the burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. DISCUSSION

Plaintiff's Complaint asserts three counts against Defendant: (1) violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k) for failure to respond to RFIs under the Real Estate Settlement Procedures Act ("RESPA"); (2) violation of 12 C.F.R. § 1035(e) and § 2605(e) for failure to respond to NOEs under RESPA; and (3) violation of the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 1 at 14–23.) Defendant moves for summary judgment on all three. The Court begins with the RESPA claims.

### A. Counts 1 and 2: Applicable Law

RESPA provides an action for damages against mortgage-loan servicers who fail to respond to certain types of inquiries from borrowers. *See* 12 U.S.C. § 2605; *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012). Under RESPA, a loan servicer must respond if it "receives a *qualified written request* from the borrower." § 2605(e)(1)(A) (emphasis added). A qualified written request ("QWR") is a written correspondence that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

§ 2605(e)(1)(B). There is also a third requirement: "the letter must request information relating to servicing." *Medrano*, 704 F.3d at 666. This is necessary because "the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Id.* (emphasis in original); § 2605(e)(1)(A) (requiring a loan servicer to

respond to a QWR "for information relating to the servicing of such loan"). Thus, a QWR must: (1) identify the borrower's name and account; (2) claim an error or seek information; and (3) relate to servicing the loan. § 2605(e)(1). If not, the correspondence does not "give rise to a duty to respond under § 2605(e)." *Medrano*, 704 F.3d at 667.

The question here is whether a NOE and RFI are distinct from QWRs such that they need not relate to loan servicing to trigger a servicer's response obligations. The confusion begins with § 2650(k). That section prohibits a loan servicer from "fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." § 2605(k)(1)(E). RESPA's implementing regulation, Regulation X, establishes requirements for NOEs and RFIs. 12 C.F.R. § 1024.35 (NOEs); 12 C.F.R. § 1024.36 (RFIs). Indeed, neither regulation explicitly requires a NOE or RFI to relate to servicing.

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

12 C.F.R. § 1024.35(a) (NOE).

> A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting *with respect to the borrower's mortgage loan*.

12 C.F.R. § 1024.36(a) (emphasis added) (RFI). This language as to RFIs is notably broader than § 2605(e)'s requirement that an inquiry relate to servicing. Instead, it only requires the inquiry to be "with respect to the borrower's mortgage loan." So the question arises: does Regulation X, which implements § 2605, broaden the relate to servicing requirement by only requiring an inquiry relate to the borrower's mortgage loan.

These regulations do not make clear whether a NOE and RFI are a QWR, and thus subject to the three § 2605(e) requirements. True, they state that a QWR is either an NOE or RFI: "A qualified written request that [asserts an error/requests information] relating to the servicing of a mortgage loan is a [notice of error/request for information] for purposes

of this section." 12 C.F.R. § 1024.35(a); 12 C.F.R. § 1024.36(a). But they do not state the inverse. Consequently, litigants across the country argue that, pursuant to § 2605(k)(1)(E), Regulation X broadens a loan servicer's statutory response obligation for NOEs and RFIs. Plaintiff joins the chorus.

The Court refuses to sing along. Regulation X does not create a backdoor to § 2605(e)'s requirement that a correspondence relate to loan servicing to trigger a loan servicer's duty to respond. Plaintiff's theory is conditioned on § 2605(k), which prohibits violation of regulations intended "to carry out the consumer protection purposes of" RESPA. It follows that the regulations implementing RESPA must align with its intent. *See Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 326 (2014) ("Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." (citation modified)). Fortunately, the Ninth Circuit already interpreted Congress's intent as to a loan servicer's duty to respond under RESPA.[2] *Medrano*, 704 F.3d at 665 ("[W]e begin by turning to the text of the statute, as well as its object and policy, to discern congressional intent."). The Court is bound by this construction.

In *Medrano*, the Ninth Circuit recognized that "Congress intended RESPA to serve consumer-protection purposes." *Id.* The court explained that RESPA's "first section, which is entitled 'Congressional findings and purpose,' expresses Congress' determination that 'significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process.'" *Id.* (quoting 12 U.S.C. § 2601(a)). To align with "Congress' intent that the statute serve a broad remedial purpose," the *Medrano* court held that "[t]he statute does not explicitly require any 'magic' words" for a correspondence to qualify as a QWR. *Id.* at 666. However, the court was adamant that the

---

[2] The Court rejects Plaintiff's contention that *Medrano* is inapplicable here because it preceded Regulation X. (Doc. 32 at 13.) Regulation X cannot alter RESPA's purposes. *See Miller v. United States*, 294 U.S. 435, 440 (1935) ("The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it."). Thus, *Medrano*'s construction controls regardless of Regulation X.

third QWR requirement be respected.

The court explained that "the third of those requirements—that the letter must request information relating to servicing—ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." *Id.* (emphasis in original). The court explained that "RESPA defines the term 'servicing' to encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts, and making the payments of principal and interest and such other payments.'" *Id.* (citation modified) (quoting § 2605(i)(3)). Therefore, servicing "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Id.* at 666–67 (emphasis in original). At bottom, the court found:

> The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other. That distinction makes sense because only servicers of loans are subject to § 2605(e)'s duty to respond—and they are unlikely to have information regarding those loans' originations. In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).

*Id.* at 667.

Accordingly, Congress intended for loan servicers to respond to inquiries regarding loan services. Regulation X does not override this intention. Therefore, any NOE or RFI is subject to the three QWR requirements. To hold otherwise would, for example, legally obligate a loan servicer to respond to inquiries regarding a loan's origination though "Congress drafted the statute so as not to include those matters." *Medrano*, 704 F.3d at 667; *see also Jacobsen v. HSBC Bank USA, N.A.*, 713 F. App'x 679, 680 (9th Cir. 2018) ("[L]oan servicers only need respond to requests for information related to the servicing of loans" (citing § 2605(e)).

The Court does not stand alone in its holding. Many courts in this circuit agree. *See*

*Cruz v. Freedom Mortg. Corp.*, No. CV 18-1438 PSG (KSX), 2018 WL 6118532, at *5 (C.D. Cal. May 3, 2018) (collecting cases and noting that "courts within this Circuit have regularly held that both NOEs *and* RFIs must relate to the servicing of mortgage loans" (emphasis in original)); *Friess v. Shellpoint Mortg. Servicing*, No. CV-21-08101-PCT-GMS, 2022 WL 742728, at *2 (D. Ariz. Mar. 11, 2022) (explaining that "[t]he second [QWR] requirement is divided into 'Notices of Error' and 'Requests for Information,' as described in two implementing regulations," so "[RFIs] must relate to the 'servicing' of the loan to qualify as a QWR"); *McCoy v. Wells Fargo Bank, N.A.*, No. 1:20-CV-00176-CL, 2021 WL 4451423, at *4 (D. Or. July 21, 2021) ("[I]t is clear that the 'relating to servicing' condition for triggering a servicer's duty to respond, applies to inquires/QWRs under RESPA and to inquiries/RFIs under Regulation X, which are enforceable through RESPA." (citation omitted)).

Furthermore, many courts outside this circuit also agree. *See Suarez v. Nationstar Mortg. LLC*, No. 23-20114-CIV, 2023 WL 7505266, at *9 (S.D. Fla. May 19, 2023) ("This Court agrees with other courts that have addressed this argument and finds that Regulation X did not expand the scope of RESPA to require a loan servicer to respond to a request seeking information 'with respect to' a loan."); *Nash v. PNC Bank, N.A.*, No. CV TDC-16-2910, 2017 WL 1424317, at *6 (D. Md. Apr. 20, 2017) ("This argument fails because the language in a regulation cannot be read to broaden the scope of the statutory definition of 'servicing' or to expand the types of requests for information constituting a QWR beyond those established by the statute."); *Smallwood v. Bank of Am., N.A.*, No. 1:15-CV-336, 2015 WL 7736876, at *7 n.13 (S.D. Ohio Dec. 1, 2015) ("[T]he Court does not read section [12 C.F.R. §§ 1024.35–36] to expand the definition of 'servicing' under RESPA.").

Based on the foregoing, Defendant had no legal duty to respond to Plaintiff's NOEs or RFIs unless they related to loan servicing.

**B. Count 1: Failure to Respond to RFIs**

As to count one, Plaintiff claims Defendant violated § 2605(k), and by extension,

12 C.F.R. § 1024.36. (Doc. 32 at 13.) Plaintiffs Complaint states that RFI 1, RFI 2/NOE 2, and RFI 3/NOE 3 (collectively, the "RFIs") each constituted a request for information as broadly defined by 12 C.F.R. § 1024.36(a). (Doc. 1 at 15.) Each of these RFIs requested Defendant's servicing notes, and RFI 2/NOE 2 and RFI 3/NOE 3 requested additional communications and servicing logs related to loss mitigation efforts. (*Id.* at 16.) However, Defendant refused to provide this information, reasoning that Plaintiff did not identify any specific servicing errors and/or sought information it considered proprietary and confidential. (*Id.*) Therefore, Plaintiff argues that Defendant violated 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k) by failing to adequately respond to his RFIs.[3]

Defendant argues that the RFIs were not valid QWRs because servicing notes and loss mitigation information do not relate to loan servicing, therefore, it had no legal obligation to respond. The Court begins with Plaintiff's request for information as to loss mitigation.

1. *Loss Mitigation*

Plaintiff's RFI 2/NOE 2 and RFI 3/NOE 3 asserted identical requests for information related to loss mitigation:

> 2. A copy of any communications between Mr. Cooper and LoanCare, LLC *concerning any loss mitigation attempts related to the Loan*, including, but not limited to any partial claims related to the Loan or any disputes regarding the same.
>
> 3. Any servicing notes and communication logs pertaining to *any attempts at loss mitigation by the Borrower in relation to the Loan* since June 1, 2020, including any such servicing notes and communications logs generated by LoanCare, LLC that are in Mr. Cooper's possession and/or control.

(Doc. 1-1 at 42, 71 (emphasis added).)

Defendant argues that it had no obligation to respond to these requests because they did not pertain to loan servicing. The Court agrees.

Again, RESPA tailors "servicing" to essentially mean "the servicer's role in

[3] The Complaint alleges that Defendant did not respond to RFI 2/NOE 2. However, Plaintiff's Statement of Facts states: "Undisputed that Nationstar responded to RFI 2/NOE 2." (Doc. 33 at 7 ¶ 26.) Accordingly, there is no genuine issue as to this allegation. Therefore, the Court is only concerned with the sufficiency of Defendant's responses here.

receiving the borrower's payments and making payments to the borrower's creditors." *See Medrano*, 704 F.3d at 667; § 2605(i)(3). RESPA then authorizes borrowers to dispute or request information related to such efforts. § 2605(e). Plaintiff's RFI 2/NOE 2 and RFI 3/NOE 3 are not related to this definition; rather, they are attempts to gather "facts that would be relevant to a challenge to the validity of an underlying debt." *See Medrano*, 704 F.3d at 667. RFI 2/NOE 2 explicitly contests the validity of the underlying loan, citing the intended offsetting of the Partial Claim Loan:

> Despite the Borrower's execution of the Partial Claim documents, and the recording of the Deed of Trust for the Partial Claim as a lien on the Borrower's Property, the Loan was not brought current and the Borrower remained allegedly due and owing for the June 1, 2020 payment.
>
> The Borrower has sought for Mr. Cooper, the current servicer of the Loan, to either give effect to the Partial Claim by applying the $41,666.57 in funds to the Loan or to otherwise take all reasonable and necessary steps to remove the lien represented by the Partial Claim from his property. Mr. Cooper, to date, has refused to do the same.

(Doc. 1-1 at 41.) RFI 3/NOE 3 repeats the substance of this admonition. (*Id.* at 70.)

It is therefore obvious to the Court that RFI 2/NOE 2 and RFI 3/NOE 3 "concern[] only the loan's validity and terms, not its *servicing*." *See Medrano*, 704 F.3d at 667 (emphasis in original). Essentially, Plaintiff sought information to substantiate his claim that Defendant failed to modify the existing loan by "failing to account for the funds represented by" the Partial Claim Loan. (Doc. 1-1 at 42.) A request for loan modification, and by extension, any information to support such a request, "does not concern the loan's servicing." *Medrano*, 704 F.3d at 667. Consequently, inquiries concerning "only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Id.* Many courts in this circuit agree. *See Medina v. Wells Fargo Bank*, No. EDCV 19-883 PSG (KKx), 2019 WL 6140481, at *4 (C.D. Cal. Sept. 17, 2019) ("The Court agrees with Defendant that, under RESPA, Defendant had no obligation to respond to requests concerning loan modification or loan mitigation." (citing cases)); *Gold as Tr. of Michelle Gold Separate Prop. Tr. dated Dec. 23, 2002 v. Nat'l Default Servicing Corp.*, No. 22-CV-1232 JLS (AGS), 2022 WL 5231102, at *9 (S.D. Cal. Oct. 5, 2022) (collecting

cases and noting that "'[l]oss mitigation assistance' and 'loan modification,' however, do not relate to loan servicing as defined by § 2605(i)(3)").

Accordingly, Defendant had not duty to respond to RFI 2/NOE 2 and RFI 3/NOE 3 regarding prior loss mitigation efforts and loan modification.

2. *Servicing Notes*

Plaintiff's RFIs also requested Defendant's servicing notes. RFI 1 made fourteen requests. (Doc. 101 at 23–25.) Plaintiff's Complaint challenges Defendant's refusal to provide the information in request #2: "A copy of any servicing notes related to your servicing of the Loan at any point in time since January 10, 2014." (*Id.* at 24.) RFI 2/NOE 2 and RFI 3/NOE 3 made similar requests: "A copy of any servicing notes related to your servicing of the Loan at any point in time since September 1, 2022." (*Id.* at 42, 70.)

Defendant argues that all servicing notes do not fall within RESPA's narrow definition of "servicing." (Doc. 27 at 10.) But Defendant fails to identify any case law to support this proposition. Instead, Defendant contends that servicing notes do not relate to servicing because they "reflect other actions taken with respect to the loan, such as internal processes and communications; communications with the borrower and third parties; credit reporting issues; etc." (*Id.*) The Court is not convinced. A loan servicer cannot claim he has no duty to provide any servicing notes merely because some servicing notes may contain information that does not relate to loan payments. *See Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013) ("Courts have held that a letter that mixes servicing requests and non-servicing requests can constitute a valid QWR."). Ostensibly "communications with the borrower" could relate to loan payments; Defendant fails to explain otherwise. Therefore, the Court reject's Defendant's sweeping argument.

Alternatively, Defendant argues that Plaintiff's requests for servicing notes are not valid QWRs here. Defendant explains that the requested servicing notes would not relate to payment information (*i.e.*, servicing) because Plaintiff did not make any payment with Defendant prior to issuing the RFIs. Defendant claims Plaintiff made his first payment to Defendant five months after RFI 3/NOE 3. (Doc. 27 at 11.) Defendant supports this claim

by citing the June 2024 loan modification agreement where Plaintiff agreed to begin payments on July 1, 2024. (Doc. 28-2 at 150.) Notably, Plaintiff does not respond to Defendant's assertion *See Taylor v. Cesarez*, No. 5:09-CV-00240-CJC (SK), 2018 WL 6136154, at *8 (C.D. Cal. June 27, 2018) ("[W]hen the nonmoving party fails to address the moving party's competently-supported assertion of a fact as required by Rule 56(c), the Court may consider the fact undisputed for purposes of the summary judgment motion."). In short, Defendant argues the requested servicing notes could not relate to servicing because they could not relate to Plaintiff's payments with Defendant. The Court finds Defendant's argument persuasive.

Plaintiff narrowly requested "servicing notes related to your servicing of the Loan." Thus, Defendant had an obligation to produce any notes related to it receiving and making payments on Plaintiff's loan. Defendant sufficiently responds with evidence that none of these servicing notes would relate to loan payments because Plaintiff had not made any payments to Defendant prior to issuing his RFIs. Accordingly, the Court is convinced that Defendant had no duty to respond because Plaintiff's RFIs as to Defendant's servicing notes were not valid QWRs in this context.

Based on the foregoing, the Court grants summary judgment in favor of Defendant as to count one because Defendant had no duty under RESPA to respond to Plaintiff's RFIs regarding loss mitigation and servicing notes because neither related to loan servicing.

**C. Count 2: Failure to Respond to NOEs**

As to count two, Plaintiff alleges Defendant violated 12 C.F.R. § 1024.35(e) and § 2605(e) and (k). (Doc. 1 at 18.) Plaintiff's Complaint states that NOE 1, RFI 2/NOE 2, and RFI 3/NOE 3 (collectively, the "NOEs") each constituted a notice of error as defined by 12 C.F.R. § 1024.35(a). (*Id.* at 20.) However, Plaintiff concedes that Defendant had no obligation to respond to NOE 1 because it was emailed to Defendant rather than mailed to Defendant's designated address. (Doc. 32 at 18.); *see* § 1024.35(c) ("A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section."); *see also*

*Robinson v. Bank of Am., N.A.*, No. 21-CV-00110-AJB-DEB, 2022 WL 837073, at *6 (S.D. Cal. Mar. 21, 2022) ("Although the Ninth Circuit has not ruled on the issue, the Second and Tenth Circuits have each held that a servicer's obligation to respond to a QWR is not triggered unless the QWR is sent to the address the servicer has designated for receipt and handling of QWRs."). Consequently, only RFI 2/NOE 2 and RFI 3/NOE 3 are at issue.

These two NOEs assert that Defendant failed "to account for the funds represented by or otherwise remove the lien imposed by the Partial Claim" in violation of 12 C.F.R § 1024.35(b)(11). (Doc. 1 at 20; Doc. 1-1 at 38, 68.) Section 1024.35(b)(11) pertains to "error[s] relating to the servicing of a borrower's mortgage loan." Above, the Court addressed all three of the RFIs/NOEs asserted in RFI 2/NOE 2 and RFI 3/NOE 3, finding that none related to RESPA's definition of servicing. Therefore, the Court finds that Defendant had not duty to respond to RFI 2/NOE 2 and RFI 3/NOE 3.

Accordingly, the Court grants summary judgment in favor of Defendant as to count two because Defendant had no duty under RESPA to respond to Plaintiff's NOEs.

**D. Count 3: the FDCPA**

Finally, Plaintiff alleges Defendant violated the FDCPA. "As a threshold matter, the FDCPA applies only to a debt collector who engages in practices prohibited by the Act in an attempt to collect a consumer debt." *Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009). Courts in this circuit consistently hold that "mortgage servicing companies, are not debt collectors subject to the FDCPA." *See id.*; *Hamilton v. Tiffany & Bosco PA, No*. CV-14-00708-PHX-GMS, 2014 WL 4162362, at *6 (D. Ariz. Aug. 20, 2014) (same); *Ng v. NA*, No. 15-CV-04998-PSG, 2016 WL 3017648, at *4 (N.D. Cal. May 26, 2016), *aff'd sub nom.*, *Ng v. U.S. Bank, NA*, 712 F. App'x 665 (9th Cir. 2018) (same). Here, Defendant is a mortgage servicer and therefore not a debt collector. (Doc. 1 at 2.) Therefore, Plaintiff's FDCPA claim fails as a matter of law.

Accordingly, the Court grants summary judgment in favor of Defendant as to count three.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant's Motion for Summary Judgment (Doc. 27.)

**IT IS FURTHER ORDERED vacating** the trial set for September 15, 2026 and the Final Trial Management Conference set for September 14, 2026.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment in Defendant's favor and terminate this case.

Dated this 30th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge